**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**


UNITED STATES OF AMERICA,        )
                                 )
           Plaintiff,         )
      v.                   )  Criminal Action
                                 )  No. 03-03135-01-CR-S-RED
RUFUS WRIGHT,              )
                                 )
          Defendants.     )


## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant has filed a Motion to Suppress Evidence in which he asserts that there was a pretextual stop of his vehicle, and that the evidence should therefore be suppressed. The government has responded to that motion.

The matter was set for an evidentiary hearing, which was held before the undersigned on April 14, 2005. The defendant was present with counsel, Darryl Johnson. The United States was represented by Kimberly Weber Dean, Special Assistant United States Attorney.

The United States first called Sergeant Dan Banasik of the DEA. A confidential informant contacted his office on July 25, 2003, and said he could get methamphetamine from defendant and Michael Hankins. The confidential source said that defendant and Mr. Hankins were bringing methamphetamine from California to the southwest Missouri area. The source told him that defendant and Mr. Hankins wanted to rent a vehicle to go to California to get the methamphetamine. The confidential source rented the vehicle for defendant, using his own credit card, and was reimbursed by the DEA. They were later informed that Mr. Hankins was

1

Case 6:03-cr-03135-GAF   Document 87   Filed 05/06/05   Page 1 of 8

not going on the trip. The confidential source kept in contact with Mr. Hankins regarding defendant's location on the trip to California and back. At least three of these telephone calls were recorded to determine defendant's whereabouts and his expected time of arrival. It was the officer's opinion that these recorded calls substantiated the information from the confidential source. On August 6, DEA received information that defendant was returning to southwest Missouri. It was decided that the confidential source would arrange to meet him at a designated area at a truck stop, and that defendant's vehicle would be stopped prior to his arrival at that location. Sergeant Banasik testified that they had probable cause that there was methamphetamine in the vehicle, and that the plan was that defendant would be arrested for possession of controlled substances with intent to distribute. Sergeant Banasik, together with Special Agents Hooten and Krisik, were positioned I-44 on the Missouri/Oklahoma line. He was being assisted by the Missouri State Highway Patrol, whom he had instructed to stop defendant's vehicle. A vehicle matching the description of the one rented for defendant passed their location. Although he was unable to determine the occupant or the license number, he passed on the information that the vehicle was possibly approaching to the Missouri Highway Patrol officers who were stationed a mile down the road.

The troopers did eventually stop defendant's vehicle. Sergeant Banasik came on the scene after they had stopped him, and participated in the search. They located a plastic bundle or baggie of methamphetamine in a styrofoam cup in the cup holder. During the search, defendant was either in the patrol vehicle or beside it. He was not handcuffed at the time of the search. After the methamphetamine was found, defendant was placed under arrest.

On cross examination, the officer testified that the confidential source was in contact with

Case 6:03-cr-03135-GAF   Document 87   Filed 05/06/05   Page 2 of 8

Mr. Hankins, and had conversations about defendant's whereabouts and when he would return to Missouri. On August 6, they had information that defendant was returning, and the last information they had was that he was in Tulsa, traveling to Missouri. Sergeant Banasik was stationed right inside the Missouri border with Special Agents Mark Hooten and Tim Krisik. They had the description of the vehicle, the license plate number, knew where he was, that he was returning, and knew his route. Sergeant Banasik told Highway Patrol Troopers Bracker and Johnson to be on the lookout for the vehicle and pull it over when they saw it. These officers stopped defendant, and Sergeant Banasik arrived on the scene shortly after it was pulled over. Sergeant Banasik testified that, despite all the information they had from the investigation, he did not seek a warrant because he did not think it was necessary.

The second witness for the government was Trooper Mike Bracker, who is with the Missouri State Highway Patrol. He was on duty on the night of August 6. He was contacted by Sergeant Banasik and told to stop defendant's vehicle. He initiated the traffic stop. Sergeant Banasik did not positively identify the license plate as the vehicle went by, but he identify the vehicle itself. When Sergeant Banasik called him, Trooper Bracker then saw the vehicle and confirmed that the license plate on it had the same number that Sergeant Banasik had given him. With this information, his intention was to stop the vehicle, based on Sergeant Banasik's information regarding controlled substances being in it. He then observed the vehicle for a short distance, and saw that the driver was following too closely, and made a lane violation. He stopped the vehicle, made contact with defendant, who was driving, and advised him that he was stopped because of the traffic violations the officer had observed. At this point, he was conducting a routine traffic stop. Defendant produced a California driver's license and the

registration/rental information. He then asked defendant to have a seat in his patrol car. He did

not place defendant under arrest. Trooper Bracker ran the license and registration information

through the communications department. He advised defendant that he was only getting a

warning regarding the traffic violations. He thought defendant appeared to be overly nervous,

and he felt that he was under the influence of something. He was, however, responsive to the

officer's questions, and did not demonstrate that he did not understand the questions. When

asked about his route and purpose of travel, defendant stated that he was coming to the

Springfield area from Las Vegas. The officer asked for permission to search him and the

vehicle. Defendant gave consent. The officer began to search the vehicle, while defendant was

outside the patrol car. DEA agents arrived, close to the time he began to search. Defendant did

not withdraw his consent at any time.

  On cross examination, Trooper Bracker testified that Sergeant Banasik told him of their

suspicions that defendant was transporting methamphetamine, and his intention was to stop the

vehicle. He admitted, however, that he told defendant that he was stopped because of traffic

violations. He also admitted that he did not issue a ticket. The officer acknowledged that his

plan was to stop defendant based on Sergeant Banasik's information about contraband, and not

because of traffic violations. Defendant's consent to search was not in writing, and he was not

sure if it was recorded.

  The government proffered that the testimony of Trooper Johnson would be the same as

that of Trooper Bracker.

  Defendant contends that the traffic stop was pretextual, and that the officers stopped his

vehicle for a minor traffic violation so that they could search it for drugs. He also contends that

he was not made fully aware of the officers' intentions during the traffic stop, and that his consent to search was made under constraint.

It is the government's position that the stop of defendant's vehicle was valid under the Fourth Amendment because he was operating a vehicle in violation of Missouri traffic laws. Because Trooper Bracker observed him following too closely and crossing the centerline, it is asserted that there was probable cause to stop his vehicle. Further, it is contended that once a lawful stop occurred, the officer could detain defendant while conducting a routine investigation regarding his registration, driver's license, and criminal history checks. In this case, it is asserted that the detention was minimal and contemporaneous with the routine nature of the stop. The government also contends that defendant voluntarily consented to the search of his vehicle. Additionally, the government asserts that, independently of defendant's consent, probable cause existed to search the automobile for controlled substances. This was based on the information obtained from the confidential source during the ten days of investigation, including the identity of the vehicle and defendant at the time of the stop.

The law is well-established that a traffic violation provides an officer with probable cause to stop a vehicle, regardless of the severity of the violation. United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001); United States v. Enriquez Luna, 368 F.3d 876, 878 (8th Cir. 2004). It is clear, moreover, that a traffic stop based on violation of traffic laws does not violate the Fourth Amendment, "even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective." United States v. Whren, 517 U.S. 806 (1996). In this case, the undisputed evidence was that defendant committed several traffic violations. According to Trooper Bracker, he planned to stop defendant based on Sergeant Banasik's

Case 6:03-cr-03135-GAF   Document 87   Filed 05/06/05   Page 5 of 8

information regarding defendant being in possession of controlled substances, and not because of the traffic violations. Those traffic violations occurred, however, and was the basis for the stop, regardless of the fact that the officers had additional information about defendant that they wanted to investigate. Based on the testimony adduced at the hearing and applicable case law, the Court finds, initially, that there was a valid traffic stop.

Once a valid traffic stop occurs, the investigating officer is only entitled to conduct an investigation reasonably related in scope to the circumstances that justified the initial stop. Terry v. Ohio, 392 U.S. 1 (1968). It is also clear that where an individual is detained after an initial lawful stop, the question is whether the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990). Law enforcement officers are entitled to stop and briefly detain an individual for investigative purposes if there is reasonable suspicion that criminal activity may be afoot. United States v. Hill, 91 F.3d 1064, 1069 (8th Cir. 1996). A police officer may also run a computer check to establish whether the vehicle might have been stolen or whether there are outstanding warrants for any passengers in the car. See United States v. McManus, 70 F.3d 990, 993 (8th Cir. 1995); United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995). Additionally, if the responses provided give rise to suspicions unrelated to the traffic offense, the officer's inquiry may be broadened. Johnson, 58 F.3d at 357.

Regarding the scope of the investigative stop, the Court finds that based on the credible evidence adduced at the hearing, it did not exceed the limits of a legitimate Terry stop. Once a lawful stop occurred, the officer could detain defendant while conducting a routine investigation regarding his registration, driver's license, and criminal history checks. In this case, Trooper

6

Bracker testified that he performed routine checks while defendant sat in the patrol vehicle. There was nothing presented to suggest that the investigative detention was not reasonable and was not conducted in a routine manner.

In respect to defendant's consent, there is nothing before the Court to suggest that defendant's consent was not voluntarily given. Although he contends that he was not fully aware of the officers' intentions and that his consent to search was made under constraint, there was no evidence adduced at the hearing to suggest that the officer acted in any manner that would suggest deceit, duress, or coercion. Further, according to the officer's testimony, defendant did not object to the search or attempt to withdraw his consent. Accordingly, there is no basis for suppression of the evidence seized as a result of the search based on his voluntary consent.

Additionally, independently of defendant's consent, probable cause existed to search the automobile for controlled substances. The officers had information from a confidential source who provided details about defendant's involvement with controlled substances. Over a ten-day investigation, law enforcement officers corroborated this information, and were involved with renting a vehicle for defendant's trip to California to purchase drugs. They received information about the trip to California, defendant's anticipated return to Missouri with controlled substances in his possession, and his anticipated location at the time of the stop. Sergeant Banasik observed the vehicle on the highway, and Trooper Bracker then confirmed the license plate number. Accordingly, there was clearly probable cause to search the vehicle for controlled substances, which would obviate the need for a search warrant. See United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999).

Based on the testimony adduced at the hearing, and applicable case law, the Court finds that it should be recommended that defendant's Motion to Suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendants' Motions to Suppress Evidence be denied.


/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge


Date:    5/6/05